E-FILED
Thursday, 19 November, 2026 02:56:49 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

FORD MOTOR CREDIT COMPANY LLC )
)
Plaintiff, )
)
vs. )
) Case No.: ____________
GALLERY FORD OF PEKIN LLC, and )
WILLIAM ANTHONY ATTRACHI, individually, )
)
Defendants. )

## VERIFIED COMPLAINT FOR DAMAGES AND REPLEVIN

Plaintiff Ford Motor Credit Company LLC ("Ford Credit"), by and for its Verified Complaint for Damages and Replevin against Gallery Ford of Pekin LLC ("Gallery Ford" or "Dealer") and William Anthony Attrachi, individually ("Attrachi"), alleges as follows:

## NATURE OF THE ACTION

1. Ford Credit brings this action to, among other things: enforce its rights as a secured creditor under Ford Credit's agreements with Gallery Ford; recover certain indebtedness that Gallery Ford owes to Ford Credit; obtain possession of collateral that is subject to Ford Credit's first-priority, properly-perfected security interest; and enforce the personal guaranty made to Ford Credit by Attrachi.

2. Gallery Ford is in default, having breached its agreements with Ford Credit by, among other things, selling, leasing, or placing in use vehicles subject to Ford Credit's security interest without remitting required payments to Ford Credit, failing to pay other amounts owed to Ford Credit as and when they have become due, and failing to pay the amounts duly demanded by Ford Credit after those defaults.

3. Ford Credit has also demanded that Gallery Ford surrender vehicles and other items of collateral that are subject to Ford Credit's security interest, but Gallery Ford has refused and failed to do so.

4. Ford Credit has further demanded that guarantor Attrachi pay Ford Credit the amounts owed to it, but he has refused and failed to do so.

**THE PARTIES AND PERSONAL JURISDICTION**

5. Ford Credit is a limited liability company organized under the laws of the State of Delaware, and is authorized to do business in Illinois.

6. Ford Credit's sole member is Ford Holdings LLC, a limited liability company organized under the laws of the State of Delaware, with a principal place of business located at One American Road, Dearborn, Michigan 48126.

7. The sole member of Ford Holdings LLC is Ford Motor Company, a Delaware corporation with its principal place of business in Dearborn, Michigan.

8. Ford Credit's principal place of business is located at One American Road, Dearborn, Michigan 48126.

9. Because a limited liability company is a citizen of every state of which its members are citizens, Ford Credit is therefore a citizen of Delaware and Michigan for purposes of 28 U.S.C. § 1332.

10. Accordingly, for jurisdictional purposes, Ford Credit is a citizen of Delaware and Michigan.

11. Gallery Ford is a limited liability company organized under the laws of the State of Illinois, with its principal place of business located at 2200 N. 8th Street, Pekin, Illinois 61554.

12. Upon information and belief, the members of Gallery Ford and their residences are as follows: (1) Attrachi is a natural person domiciled in Texas, residing at 1800 N. Field Street,

#4002, Dallas, Texas 75202; (2) Sasha Rahmati is a natural person residing at 1714 Lowell Boulevard, Denver, Colorado 80204; Ray Fregia Jr. is a natural person residing at 3307 Fairway Drive, Danville, Illinois 61832.

13. Accordingly, for jurisdictional purposes, Gallery Ford is a citizen of Illinois, Texas, and Colorado. Gallery Ford, which is located in this District, is subject to personal jurisdiction in Illinois.

14. For jurisdictional purposes, Attrachi is a citizen of Texas, and he is subject to personal jurisdiction in Illinois pursuant to his continuous and substantial contacts with the forum including, but not limited to, his conduct as Gallery Ford's principal and guarantor.

## SUBJECT MATTER JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1332(a), as there exists complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16. Specifically, the value of the collateral Ford Credit seeks to recover in this action is approximately $4,208,060.45.

17. Further, the indebtedness Ford Credit seeks to recovery from Gallery Ford and Attrachi is not less than $4,464,838.74.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because: (a) a substantial part of the events, omissions, and transactions giving rise to the claims occurred in Tazewell County, Illinois; and (b) the property that Ford Credit seeks to recover through this replevin action is located within Tazewell County, Illinois.

## THE AGREEMENTS BETWEEN FORD CREDIT AND GALLERY FORD

### A. The Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement

19. On or about February 22, 2022, Gallery Ford executed and delivered to Ford Credit an Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement (the "Wholesale Agreement"). A copy of the Wholesale Agreement is attached as **Exhibit A**.

20. Gallery Ford executed the Wholesale Agreement to induce Ford Credit to extend a wholesale line of credit (to be used by Gallery Ford to finance its acquisition of new and used vehicles, a type of financing commonly known as floorplan financing) and to provide other financing accommodations.

21. Amounts advanced by Ford Credit pursuant to the Wholesale Agreement are called "Advances." *Id.* at ¶ 1.

22. Gallery Ford agreed "to pay Ford Credit, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus Ford Credit's interest and flat charges with respect thereto …." *Id.* at ¶ 3.

23. In exchange for the financing provided under the Wholesale Agreement, Gallery Ford granted Ford Credit a security interest in, among other collateral, the motor vehicles financed, their proceeds, and rebates or refunds owed to Gallery Ford. *See id.* at ¶ 4.

24. Upon an Event of Default, Ford Credit was entitled to accelerate, and declare immediately due and payable, any or all of the unpaid Advances, plus accrued interest and flat charges, and to take immediate possession of all property in which it has a security interest. *See id.* at ¶ 9.

25. In the event that Ford Credit was required to resort to legal process to enforce its rights under the Wholesale Agreement, Gallery Ford agreed "to pay reasonable attorneys' fees and legal expenses incurred by Ford Credit in connection with the repossession and sale" of its collateral. *Id.*

**B. The Security Agreement**

26. On or about February 22, 2022, Gallery Ford executed and delivered a Security Agreement to Ford Credit (the "Security Agreement"). A copy of the Security Agreement is attached as **Exhibit B**.

27. Pursuant to the Security Agreement, Gallery Ford granted Ford Credit a security interest in the following collateral and the proceeds thereof:

(a) All equipment, fixtures, furniture, demonstrators and service vehicles, supplies and machinery and other goods of every kind.

(b) All motor vehicles, tractors, trailers, service parts and accessories and other inventory of every kind and any accessions thereto.

(c) All accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto.

28. The term "Collateral" will be used throughout the remainder of this Complaint to refer collectively to all property, accounts, papers, rights, and proceeds in which Gallery Ford granted Ford Credit a security interest under the Wholesale Agreement and/or the Security Agreement, and in which Ford Credit has a first-priority, properly-perfected security interest as of the date of this filing.

**C. Wholesale Continuing Guaranty**

29. On or about February 22, 2022, Attrachi (the "Guarantor") executed and delivered to Ford Credit a Continuing Guaranty (the "Wholesale Guaranty"). A copy is attached as **Exhibit C**.

30. The Wholesale Guaranty was expressly made "to induce [Ford Credit] to make loans to and/or make advances under [its] Wholesale Plan to, and to purchase or otherwise acquire retail installment sale contracts, conditional sale contracts, chattel mortgages, or other security instruments or to otherwise extend credit to or do business with" Gallery Ford.

31. Under the Wholesale Guaranty, Attrachi "jointly and severally, and unconditionally" agreed to:

> [F]ully, promptly, and faithfully perform, pay and discharge all Dealer's present and future obligations to you; and agrees, without your first having to proceed against Dealer or to liquidate paper or any security therefore, to pay on demand all sums due and to become due to you from Dealer and all losses, costs, attorneys' fees or expenses which you may suffer by reason of Dealer's default, and agrees to be bound by and on demand to pay any deficiency established by a sale of paper or security held with or without notice to us; together with a reasonable attorney's fee (15% if permitted by law) if placed with an attorney for collection from us.

*See* Ex. C.

## THE COLLATERAL AND FORD CREDIT'S SECURITY INTEREST

32. The Collateral includes the vehicles identified in the listing that is attached as **Exhibit D**, which is current through November 12, 2026.

33. The Collateral also includes, without limitation, Gallery Ford's parts, equipment, accounts, chattel paper, general intangibles, contract rights, documents, supporting obligations, and proceeds.

34. Ford Credit has a first-priority, properly-perfected security interest in the Collateral that it perfected by a blanket UCC financing statement filing dated February 24, 2022, and which Ford Credit has continued through the present date by timely filing continuations and amendments since its initial filing. Copies of Ford Credit's financing statement and all amendments thereto and continuations thereof are attached as **Exhibit E**.

## DEFAULTS BY GALLERY FORD

35. Gallery Ford has defaulted under its agreements with Ford Credit by, among other things: (a) selling vehicles out of trust (selling vehicles without holding the sales proceeds in trust and remitting from those proceeds amounts due to Ford Credit upon the sale of vehicles that were subject to Ford Credit's security interest); (b) failing to make other required payments to Ford

Credit as and when due; and (c) failing and refusing to surrender Ford Credit's collateral to it after Ford Credit's request for the same.

36. On March 25, 2026, a Dealer Electronic Funds Transfer ("DEFT") from Gallery Ford to pay off amounts owed to Ford Credit for financed vehicles sold was returned for insufficient funds.

37. That day, Ford Credit initiated containment measures to protect its Collateral, including collecting keys, titles, and manufacturers' statements of origin ("MSOs") for the vehicles constituting its Collateral.

38. On March 26, 2026, Ford Credit conducted an emergency inventory audit of its Collateral at the Dealer.

39. That audit identified an additional $139,260.45 owed by Gallery Ford to Ford Credit for sold financed vehicles.

40. Later that day, Gallery Ford paid Ford Credit $103,943.45, an amount which partially satisfied the returned DEFT. However, Gallery Ford failed to pay off the remaining balance of the returned DEFT and the amounts identified as owing in the March 26, 2026 emergency audit.

41. As of March 26, 2026, Gallery Ford was, accordingly, out of trust in the amount of $415,937.35.

42. On March 27, 2026, Ford Credit sent demand letters to both the Dealer and Guarantor, demanding payment of the amount then outstanding and owed to Ford Credit for vehicles sold, leased, or placed in use but not paid, together with wholesale charges, totaling $438,342.21. The demand letter to the Dealer also limited the Wholesale Agreement to the financing of vehicles for which Gallery Ford had a firm customer's order and increased the interest

rate on the outstanding balance by four percentage points. Copies of those demand letters are attached as **Exhibit F**.

43. Ford Credit sent further demand letters to both the Dealer and Guarantor on April 27, 2026, demanding payment of the entire amount then outstanding and due to Ford Credit, totaling $3,983,291.91. Copies of those demand letters are attached as **Exhibit G**.

44. Gallery Ford and the Guarantor have failed to pay the amounts demanded, and Gallery Ford has refused to surrender Ford Credit's Collateral.

45. As result, Gallery Ford remains in breach of the Wholesale Agreement and the Security Agreement, and the Guarantor remains in breach of the Wholesale Guaranty.

46. As of November 13, 2026, the amount due and owing from Gallery Ford and Guarantor to Ford Credit, exclusive of attorneys' fees and costs, totals $4,464,838.74.

**FIRST CAUSE OF ACTION**
**(Replevin/Claim and Delivery of Collateral – Gallery Ford)**

47. Ford Credit realleges and incorporates by reference the foregoing paragraphs.

48. Despite Ford Credit's demands that Gallery Ford cure its defaults, pay all amounts due, and surrender the Collateral, Gallery Ford has not done so.

49. Gallery Ford continues to wrongfully hold and possess the Collateral, including the vehicles listed in Exhibit D, which are subject to Ford Credit's first-priority, properly-perfected security interest.

50. The Collateral also includes parts, equipment, accounts, chattel paper, general intangibles, and proceeds that are also subject to Ford Credit's first-priority, properly perfected security interest.

51. Under the Wholesale Agreement and Security Agreement, and pursuant to the Illinois replevin statute, 735 ILCS 5/19-101 *et seq.*, as applicable in federal court under Federal Rule of Civil Procedure 64, Ford Credit is entitled to immediate possession of the Collateral.

52. Ford Credit has demanded surrender of the Collateral, but Gallery Ford has refused to surrender, and continues to detain, the Collateral.

53. The Collateral has not been taken for any tax, assessment, or fine levied under Illinois law, has not been seized under any execution or attachment, and is not held pursuant to any order of replevin against Ford Credit.

54. The Collateral is located in Tazewell County, Illinois.

55. The aggregate estimated value of the vehicles listed in Exhibit D is approximately $3,973,060.45, and the total value of Ford Credit's Collateral is estimated to be $4,208,060.45.

WHEREFORE, Plaintiff Ford Motor Credit Company LLC requests that this Court:

(a) Enter an order for replevin and any additional orders in connection therewith ordering the Sheriff or such other officer to take the Collateral and deliver it to Ford Credit;

(b) Enter a final judgment granting Ford Credit final possession of the Collateral;

(c) Award damages to Ford Credit for the wrongful detention of the Collateral and the value of any Collateral not delivered;

(d) Award Ford Credit its attorneys' fees and costs of collection incurred to enforce its right to possession; and

(e) Award Ford Credit such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**(Breach of Wholesale Financing Agreement – Gallery Ford)**

56. Ford Credit realleges and incorporates by reference the foregoing paragraphs.

57. The Wholesale Agreement is a valid and enforceable contract by and between Gallery Ford and Ford Credit.

58. Ford Credit performed under the terms of the Wholesale Agreement by, among other things, providing the financing contemplated therein to Gallery Ford.

59. Gallery Ford breached the Wholesale Agreement by selling, leasing, or placing in use vehicles subject to Ford Credit's security interest without paying Ford Credit the required advances and proceeds, by failing to pay other amounts as and when due, and by failing to pay after Ford Credit's demands for the same.

60. Gallery Ford's failures constitute breaches of the Wholesale Agreement.

61. Interest continues to accrue on the unpaid financing under the Wholesale Agreement, including interest at the contractual default rate.

62. As a result, Ford Credit has been damaged in an amount to be proven at trial, but not less than $4,464,838.74, plus interest, fees (including attorneys' fees), and costs to the extent recoverable under the agreements and applicable law.

WHEREFORE, Ford Credit respectfully requests that the Court grant judgment in its favor against Gallery Ford for amounts due under the Wholesale Agreement, which are not less than $4,464,838.74, together with interest, fees (including attorneys' fees), costs, and other relief the Court deems proper.

**THIRD CAUSE OF ACTION**
**(Breach of Guaranty – William Anthony Attrachi)**

63. Ford Credit realleges and incorporates by reference the foregoing paragraphs.

64. The Guaranty is a valid and enforceable contract by and between Guarantor and Ford Credit.

65. Pursuant to the promises made and obligations assumed by Guarantor in the Guaranty, Ford Credit provided financing to Gallery Ford.

66. Pursuant to the terms of the Guaranty, Ford Credit made written demands for payment on the Guarantor on March 27, 2026 and April 27, 2026.

67. The Guarantor has not paid the amounts demanded and has thereby breached his guaranty to Ford Credit.

68. Guarantor's failure to pay such amounts constitutes a breach of the Guaranty.

69. Ford Credit is, therefore, entitled to judgment against the Guarantor on his guaranty, and to recover the entire amount of the indebtedness from him without first having to proceed against Gallery Ford.

WHEREFORE, Ford Credit respectfully requests that the Court grant judgment in its favor against Attrachi on his guaranty, in the amount of $4,464,838.74, together with interest, for Ford Credit's fees (including attorneys' fees), costs, and expenses, and for such other and further relief the Court deems proper.

**JURY DEMAND**

70. Ford Credit hereby demands a trial by jury on all issues so triable.

Date: November 19, 2026

Respectfully submitted,

By:/s/ Melanie J. Chico
Attorney for Plaintiff,
Ford Motor Credit Company LLC

Melanie J. Chico (MChico@dykema.com)
IL State Bar No. 6294469
Kayleigh R. Gerber (KGerber@dykema.com) – *Admittance pending*
IL State Bar No. 6349012
DYKEMA GOSSETT PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
Ph: (312) 876-1700
Fax: (312) 876-1155

Jacob S. Sonnor (jsonner@phillipstyle.com)
*Admittance pending*
Phillips Lytle LLP
One Canalside
125 Main St.
Buffalo, NY 14203-2887
Ph: (716) 504-5733
Fax: (716) 852-6100

## VERIFICATION

Joseph Susic verifies, pursuant to 28 U.S.C. § 1746, and under penalty of perjury and under the laws of the United States of America, that he is a Regional Manager with Ford Motor Credit Company LLC, the Plaintiff in this action; that he has read the forgoing Verified Complaint for Damages and Replevin and knows the contents thereof; that the same is true to his knowledge, except as to the matters therein alleged on information and belief, and that as to those matters he believes it to be true.

Joseph Susic, Regional Manager
Ford Motor Credit Company LLC

# EXHIBIT A

# AUTOMOTIVE WHOLESALE PLAN
# APPLICATION FOR WHOLESALE FINANCING AND SECURITY AGREEMENT

Date: February 2, 2022

To: Ford Motor Credit Company LLC, a Delaware limited liability company (hereinafter called "Ford Credit")

The undersigned GALLERY FORD OF PEKIN LLC, a limited liability company organized under the laws of or registered in the state of Illinois (hereinafter called "Dealer"), primarily managing its business from its chief executive office located at: 2200 N 8th St , Pekin, Illinois 61554 hereby requests Ford Credit to establish and maintain for Dealer a wholesale line of credit to finance new, used and demonstrator motor vehicles, trucks, truck-tractors, trailers, semi-trailers, buses, mobile homes, motor homes, other vehicles and farm and industrial implements and appliances and other inventory, equipment and goods (hereinafter called the "Merchandise") for Dealer under the terms of the applicable Ford Credit Wholesale Plan as set forth in the Automotive Finance Plan provided to dealer, or any subsequent edition or modification thereof and all policies, terms and conditions announced by Ford Credit in writing from time to time (hereinafter called the "Plan") and in connection therewith to make advances to or on behalf of Dealer, purchase installment sale contracts evidencing the sale of Merchandise to Dealer by the manufacturer, distributor or other seller thereof, or otherwise extend credit to Dealer. In consideration thereof Dealer hereby agrees as follows.

**1. Advances by Ford Credit**
Ford Credit at all times shall have the right in its sole discretion to determine the extent to which, the terms and conditions on which, and the period for which it will make such advances, purchase such contracts or otherwise extend credit to Dealer (hereinafter called an "Advance" (individually) or "Advances" (collectively)), under the Plan or otherwise. Ford Credit may, at any time and from time to time, in its sole discretion, establish, rescind or change limits or the extent to which financing accommodations under the Plan will be made available to Dealer. In connection with the purchase of any such contract and/or other extension of credit, Ford Credit may pay to any manufacturer, distributor or other seller of the Merchandise the invoice or contract amount therefore and be fully protected in relying in good faith upon any invoice, contract or other advice from such manufacturer, distributor or seller that the Merchandise described therein has been ordered or shipped to Dealer and that the amount therefore is correctly stated. Any such payment made by Ford Credit to such manufacturer, distributor or seller, and any loan or other extension of credit made by Ford Credit directly to Dealer with respect to Merchandise of any type held by Dealer for sale, shall be an Advance made by Ford Credit hereunder and, except with respect to any Advance that is a purchase of an installment sale contract, shall be repayable by Dealer in accordance with the terms hereof. All rights of Ford Credit and obligations of Dealer with respect to Advances hereunder that constitute the purchase by Ford Credit of an installment sale contract shall be pursuant to the provisions of such contract.
From time to time Ford Credit shall furnish statements to Dealer of Advances made by Ford Credit hereunder. Dealer shall review the same promptly upon receipt and advise Ford Credit in writing of any discrepancy therein. If Dealer shall fail to advise Ford Credit of any discrepancy in any such statement within ten calendar days following the receipt thereof by Dealer, such statement shall be deemed to be conclusive evidence of Advances made by Ford Credit hereunder unless Dealer or Ford Credit establishes by a preponderance of evidence that such Advances were not made or were made in different amounts than as set forth in such statement.

**2. Interest and Service and Insurance Flat Charges**
Each Advance made by Ford Credit hereunder shall bear interest at the rates established by Ford Credit from time to time for Dealer, except that any amount not paid when due hereunder shall bear interest at a rate that is 4 percentage points higher than the current pre-default rate up to the maximum contract rate permitted by the law of the state where Dealer maintains its business as set out above. In addition to interest, the financing of Merchandise under the Plan shall be subject to service and insurance flat charges established by Ford Credit from time to time for Dealer.
Ford Credit shall advise Dealer in writing from time to time of any change in the interest rate and service and insurance flat charges applicable to Dealer and the effective date of such change. Such change shall not become effective, however, if Dealer elects to terminate this Agreement and pay to Ford Credit the full unpaid balance outstanding under Dealer's wholesale line of credit and all other amounts due or to become due hereunder in good funds within ten calendar days after the receipt of such notice by Dealer.

**3. Payments by Dealer**
The aggregate amount outstanding from time to time of all Advances made by Ford Credit hereunder shall constitute a single obligation of Dealer, notwithstanding Advances are made from time to time. Unless otherwise provided in the promissory note, installment sale contract, chattel paper, security agreement or instrument evidencing the same from time to time, Dealer shall pay to Ford Credit, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus Ford Credit's interest and flat charges with respect thereto, and in any event, without demand, the unpaid balance of the Advance made by Ford Credit hereunder with respect to an item of the Merchandise at or before the date on which the same is sold, leased or placed in use by Dealer. Dealer shall also pay to Ford Credit, upon demand, the full amount of any rebate, refund or other credit received by Dealer with respect to the Merchandise. If the promissory note, installment sale contract, chattel paper, security agreement or instrument evidencing an Advance or Advances is payable in one or more installments, Ford Credit may from time to time in its sole discretion, extend any installment due thereunder on a month-to-month basis, and, except as provided below or in any installment sale contract, Ford Credit's failure to demand any such installment when due shall be deemed to be a one month extension of the same. Any such extension, however, shall not obligate Ford Credit to grant an extension in the future or waive Ford Credit's right to demand payment when due. Following the sale, lease or use date of an item of the Merchandise, no installment shall be deemed extended without Ford Credit's specific written consent, and Dealer agrees to pay the same, as required, without demand.

Ford Credit may, for administrative convenience, classify financing accommodations hereunder into "lines" such as "new" and "used" (the line(s) primarily associated with new Merchandise are hereinafter each called a "New Line"). If Dealer (or someone acting on the Dealer's behalf) tenders all amounts due under this agreement on a New Line for the purpose of refinancing the Merchandise through another finance source (herein after called a "Prepayment"), the Dealer will pay a prepayment fee for each New Line prepaid as follows: (1) If the Prepayment occurs on or before the second anniversary date of this agreement, the prepayment fee will equal two percent (2%) of the "New Line Approved Amount." The "New Line Approved Amount" is a dollar amount assigned by Ford Credit to a New Line from time to time used to assist in the administration and monitoring of Advances under the New Line; (2) If the Prepayment

occurs after the second anniversary date, but on or before the third anniversary date, the prepayment fee will equal one and a half percent (1.5%) of the New Line Approved Amount; (3) If the Prepayment occurs after the third anniversary date, but on or before the fourth anniversary date, the prepayment fee will equal one percent (1%) of the New Line Approved Amount; (4) If the Prepayment occurs after the fourth anniversary date, but on or before the fifth anniversary date, the prepayment fee will equal a half percent (.5%) of New Line Approved Amount; or (5) If the Prepayment occurs after the fifth anniversary date, no prepayment fee is due. The ability to collect a prepayment fee as provided herein is integral to the inducement of Ford Credit to extend financing accommodations hereunder to Dealer. Any prepayment fee is due at the time of Prepayment.

**4. Ford Credit's Security Interest**
As security for all Advances now or hereafter made by Ford Credit hereunder, and for the observance and performance of all other obligations of Dealer to Ford Credit in connection with the wholesale financing of Merchandise for Dealer, Dealer hereby grants to Ford Credit a security interest in the Merchandise wherever located now owned or hereafter acquired by Dealer, accessions thereto, accessories and replacement parts therefore, and in the proceeds and products thereof in whatever form, of any sale or other disposition of the Merchandise or other collateral, and in accounts, instruments, chattel paper, general intangibles, contract rights documents and supporting obligations arising from the disposition of the Merchandise or other collateral; and Dealer hereby assigns to Ford Credit, and grants to Ford Credit a security interest in, all amounts that may now or hereafter be payable to Dealer by the manufacturer, distributor or seller of any of the Merchandise by way of rebate or refund of all or any portion of the purchase price thereof. Dealer authorizes Ford Credit to file a financing statement(s) generally describing the Merchandise and other collateral provided hereunder.

**5. Dealer's Possession and Sale of Merchandise**
Dealer's possession of the Merchandise shall be for the sole purpose of storing and exhibiting the same for sale or lease in the ordinary course of Dealer's business. Dealer shall keep the Merchandise brand new and subject to inspection by Ford Credit and free from all taxes, liens and encumbrances, and any sum of money that may be paid by Ford Credit in release or discharge of any taxes, liens or encumbrances on the Merchandise or on any documents executed in connection therewith shall be paid by Dealer to Ford Credit upon demand. Except as may be necessary to remove or transport the same from a freight depot to Dealer's place of business, Dealer shall not use or operate, or permit the use or operation of, the Merchandise for demonstration, hire or otherwise without the express prior written consent of Ford Credit in each case, and shall not in any event use the Merchandise illegally or improperly. Dealer shall not mortgage, pledge or loan any of the Merchandise, and shall not transfer or otherwise dispose of the same except by sale or lease in the ordinary course of Dealer's business. Dealer will not move its place of business. Dealer will not move the Merchandise from the states listed above. Any and all proceeds of any sale, lease or other disposition of the Merchandise by Dealer shall be received and held by Dealer in trust for Ford Credit and shall be fully, faithfully and promptly accounted for and remitted by Dealer to Ford Credit to the extent of Dealer's obligation to Ford Credit with respect to the Merchandise. As used in this paragraph 5, (a) "sale in the ordinary course of Dealer's business" shall include only (i) a bona fide retail sale to a purchaser for his own use at the fair market value of the Merchandise sold and (ii) an occasional sale of such Merchandise to another dealer at a price not less than Dealer's cost of the Merchandise sold, unless such sale is a part of a plan or scheme to liquidate all or any portion of Dealer's business, and (b) "lease in the ordinary course of Dealer's business" shall include only a bona fide lease to a lessee for his own use at a fair rental value of the Merchandise leased.

**6. Risk of Loss and Insurance Requirements**
The Merchandise shall be at Dealer's sole risk of any loss or damage to the same, except to the extent of any insurance proceeds actually received by Ford Credit with respect thereto under insurance obtained by Ford Credit pursuant to the Plan. Dealer shall indemnify Ford Credit against all claims for injury or damage to persons or property caused by the use, operation or holding of the Merchandise and, if requested to do so by Ford Credit, maintain at its own expense liability insurance in connection therewith in such form and amounts as Ford Credit may reasonably require from time to time. In addition, Dealer shall insure each item of the Merchandise that is or may be used for demonstration or operated for any other purpose against loss due to collision, subject in each case to the deductible amounts and limitations set forth in the Plan.

**7. Credits**
All funds or other property belonging to Ford Credit and received by Dealer shall be received by Dealer in trust for Ford Credit and shall be remitted to Ford Credit forthwith. Ford Credit, at all times, shall have a right to offset and apply any and all credits, monies or properties of Dealer in Ford Credit's possession or control against any obligation of Dealer to Ford Credit.

**8. Information Concerning Dealer**
To induce Ford Credit to extend financing accommodations hereunder, Dealer has submitted information concerning itself, its legal name, guarantors, business organization, state of incorporation or registration correct in all respects and that the financial information contained therein and any that may be furnished to Ford Credit from time to time hereafter does and shall fairly present the financial condition of Dealer and any guarantor in accordance with generally accepted accounting principles applied on a consistent basis. Dealer agrees to notify Ford Credit at least 30 days prior to or promptly after receiving knowledge thereof of any merger or material change in its business organization, name, form of organization, state of incorporation or registration, or financial condition or in any information relating thereto previously furnished to Ford Credit. Dealer acknowledges and intends that Ford Credit shall rely, and shall have the right to rely, on such information in extending and continuing to extend financing accommodations to Dealer. Dealer hereby authorizes Ford Credit from time to time and at all reasonable times to examine, appraise and verify the existence and condition of all Merchandise, documents, commercial or other paper and other property in which Ford Credit has or has had any title, title retention, lien, security or other interest, and all of Dealer's books and records in any way relating to its business.

**9. Default**
The following shall constitute an Event of Default hereunder:
(a) Dealer shall fail to promptly pay any amount now or hereafter owing to Ford Credit as and when the same shall become due and payable, or
(b) Dealer shall fail to duly observe or perform any other obligation secured hereby, or
(c) any representation made by Dealer to Ford Credit shall prove to have been false or misleading in any material respect as of the date on which the same was made, or
(d) a proceeding in bankruptcy, insolvency or receivership shall be instituted by or against Dealer or Dealer's property.
Upon the occurrence of an Event of Default Ford Credit may accelerate, and declare immediately due and payable, all or any part of the unpaid balance of all Advances made hereunder together with accrued interest and flat charges, without notice to anyone. In addition, Ford Credit may take immediate possession of all property in which it has a security interest hereunder, without demand or other notice and without legal process. For this purpose and in furtherance thereof if Ford Credit so requests, Dealer shall assemble such property and make it available to Ford Credit at a reasonable convenient place designated by Ford Credit, and Ford Credit shall have the right, and Dealer hereby authorizes and empowers Ford Credit, its agents or representatives, to enter upon the premises wherever such property may be and remove the same. In the event Ford Credit acquires possession of such property or any portion thereof, as hereinbefore provided, Ford Credit may, in its sole discretion (i) sell the same, or any portion thereof, after at least five days' written notice or such notice as required by law, at public or private sale for the account of Dealer, (ii) declare this agreement, all wholesale transactions and Dealer's obligations in connection therewith to be terminated and cancelled and retain any sums of money that may have been paid by Dealer in connection therewith, and (iii) enforce any other remedy that Ford Credit may have under applicable law. Dealer agrees that the sale by Ford Credit of any new

and unused property repossessed by Ford Credit to the manufacturer, distributor or seller thereof, or to any person designated by such manufacturer, distributor or seller, at the invoice cost thereof to Dealer less any credits granted to Dealer with respect thereto and reasonable costs of transportation and reconditioning, shall be deemed to be a commercially reasonable means of disposing of the same. Dealer further agrees that if Ford Credit shall solicit bids from three or more other dealers in the type of property repossessed by Ford Credit hereunder, any sale by Ford Credit of such property in bulk or in parcels to the bidder submitting the highest cash bid therefore also shall be deemed to be a commercially reasonable means of disposing of the same. Dealer understands and agrees, however, that such means of disposal shall not be exclusive and that Ford Credit shall have the right to dispose of any property repossessed hereunder by any commercially reasonable means. Dealer agrees to pay reasonable attorneys' fees and legal expenses incurred by Ford Credit in connection with the repossession and sale of any such property. Ford Credit's remedies hereunder are cumulative and may be enforced successively or concurrently.

**10. General**

Dealer waives the benefit of all homestead and exemption laws and agrees that the acceptance by Ford Credit of any payment after it may have become due or the waiver by Ford Credit of any other default shall not be deemed to alter or affect Dealer's obligations or Ford Credit's right with respect to any subsequent payment or default.

Neither this agreement, nor any other agreement between Dealer and Ford Credit, or between Dealer and any manufacturer, distributor or seller that has been assigned to Ford Credit, nor any funds payable by Ford Credit to Dealer, shall be assigned by Dealer without the express prior written consent of Ford Credit in each case.

Any provision hereof prohibited by any applicable law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof. Except as herein provided, no modification hereof may be made except by a written instrument duly executed by, or pursuant to the express written authority of an executive officer of Ford Credit.

Dealer shall execute and deliver to Ford Credit promissory notes or other evidences of Dealer's indebtedness hereunder, security agreements, trust receipts, chattel mortgages or other security instruments and any other documents which Ford Credit may reasonably request to confirm Dealer's obligations to Ford Credit and to confirm Ford Credit's security interest in the Merchandise financed by Ford Credit under the Plan or in any other property as provided hereunder, and in such event the terms and conditions hereof shall be deemed to be incorporated therein. Ford Credit's security or other interest in any Merchandise shall not be impaired by the delivery to Dealer of Merchandise or of bills of lading, certificates of origin, invoices or other documents pertaining thereto or by the payment by Dealer of any curtailment, security or other deposit or portion of the amount financed. The execution by Dealer or on Dealer's behalf of any document for the amount of any credit extended shall be deemed evidence of Dealer's obligation and not payment thereof. Ford Credit may, for and in the name of Dealer, endorse and assign any obligation transferred to Ford Credit by Dealer and any check or other medium of payment intended to apply upon such obligation. Ford Credit may complete any blank space and fill in omitted information on any document or paper furnished to it by Dealer.

Unless the context otherwise clearly requires, the terms used herein shall be given the same meaning as ascribed to them under the provisions of the Uniform Commercial Code. Section headings are inserted for convenience only and shall not affect any construction or interpretation of this agreement.

This agreement shall be interpreted in accordance with the laws of the state of the Dealer's place of business set out above.

**11. Acceptance and Termination**

Dealer waives notice of Ford Credit's acceptance of this agreement and agrees that it shall be deemed accepted by Ford Credit at the time Ford Credit shall first extend credit to Dealer under the Plan. This agreement shall be binding on Dealer and Ford Credit and their respective successors and assigns and shall bind all persons who become bound as a debtor to this agreement from the date thereof until terminated by receipt of a written notice by either party from the other, except that any such termination shall not relieve party from any obligation incurred prior to the effective date thereof.

GALLERY FORD OF PEKIN LLC
an Illinois limited liability company
(Dealer's Exact Legal Name)

By: ______________________
WILLIAM ANTHONY ATTRACHI, Member

STATE OF Illinois )
) SS
COUNTY OF Tazewell )

On February 22, 2022, before me, the undersigned Notary Public, personally appeared WILLIAM ANTHONY ATTRACHI, who acknowledged himself/herself to be a member of GALLERY FORD OF PEKIN LLC, the grantor of the foregoing Power of Attorney, and that he/she, being authorized so to do, executed the foregoing Power of Attorney for the purposes therein contained, by signing on behalf of the said grantor in the capacity indicated.

IN WITNESS WHEREOF I have hereunto set my hand and official seal.

(Notary Seal)

Debra J Ibbotson
NOTARY PUBLIC

My commission expires: 6/22/2022

"OFFICIAL SEAL"
DEBRA J IBBOTSON
Notary Public, State of Illinois
My Commission Expires 6/22/2022

# POWER OF ATTORNEY FOR WHOLESALE

KNOW ALL MEN BY THESE PRESENTS: That the undersigned dealer does hereby make, constitute and appoint the Director of Commercial Risk Management and any other officer or employee of Ford Motor Credit Company LLC, a Delaware limited liability company ("Ford Credit") of Dearborn, Michigan, its true and lawful attorneys with full power of substitution, for and in its name, stead and behalf, to prepare, make, execute, acknowledge and deliver to Ford Credit from time to time promissory notes or other evidences of indebtedness, bearing such rate of interest as Ford Credit may require from time to time, and trust receipts, chattel mortgages and other title retention or security instruments necessary or appropriate in connection with the wholesale financing by Ford Credit of merchandise for the undersigned dealer under the terms of the Ford Credit Automotive Wholesale Plan, and generally to perform all acts and to do all things necessary or appropriate in discharge of the power hereby conferred, including the making of affidavits and the acknowledging of instruments, as if fully done by the undersigned dealer, and the said attorney hereby is further authorized and empowered in the discharge of the power hereby conferred to execute any instruments by means of either a manual, imprinted or other facsimile signature or by completing a printed form to which an imprinted or other facsimile signature is then affixed.

This Power of Attorney is executed by the undersigned dealer to induce Ford Credit to make advances for merchandise to be acquired by the undersigned dealer and recognizes that such advances are made to manufacturers, distributors and other sellers of such merchandise at places other than the undersigned dealer's place of business, and that it is impractical for the undersigned dealer to execute the promissory notes, trust receipts, chattel mortgages and other title retention or security instruments necessary or appropriate in connection with such advances without unduly delaying the delivery of such merchandise to the undersigned dealer. Accordingly, this Power of Attorney may be revoked by the undersigned dealer only by notice in writing addressed to Ford Credit, The American Road, Dearborn, Michigan 48121 by registered mail, return receipt requested, stating an effective date on or after the receipt thereof by Ford Credit.

Dated: February 22, 2022

GALLERY FORD OF PEKIN LLC
an Illinois limited liability company
(Dealer's Exact Legal Name)

By: ______________________
WILLIAM ANTHONY ATTRACHI, Member

# EXHIBIT B

# SECURITY AGREEMENT

Date: February 22, 2022

For a good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned GALLERY FORD OF PEKIN LLC organized under or registered in the state of Illinois, primarily managing its business from its chief executive office located at 2200 N 8th St , Pekin, Illinois 61554 hereby grants unto Ford Motor Credit Company LLC, a Delaware limited liability company (hereinafter called "Ford Credit"), a security interest in the following types of property wherever located, now owned or hereafter acquired by the undersigned (hereinafter called the "Collateral") and the proceeds and products thereof:

a) All equipment, fixtures, furniture, demonstrators and service vehicles, supplies and machinery and other goods of every kind.

b) All motor vehicles, tractors, trailers, service parts and accessories and other inventory of every kind and any accessions thereto.

c) All accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto.

Ford Credit may, in the name of the undersigned or otherwise, receive, collect and receipt for the payment of all monies payable with respect to the foregoing accounts, instruments, chattel paper, general intangibles, contract rights, documents, and supporting obligations thereto and give full discharge therefor; endorse any checks, drafts, money orders or instruments for the payment thereof payable to or to the order of the undersigned that may be received by Ford Credit in connection therewith; sue for, settle, adjust and compromise all present and future claims arising thereunder or in connection therewith; sell, assign, pledge or make any other agreement with respect thereto; and exercise all other rights and remedies that the undersigned would have with respect thereto but for this Security Agreement. The undersigned: (1) authorizes Ford Credit to file a financing statement(s) generally describing the Collateral; and (2) will not merge, change its legal organization structure, its state of incorporation or organization, or name without 30 days prior written notice to Ford Credit. Ford Credit may assign its rights hereunder.

If the undersigned is a corporation, limited liability company, or partnership, the undersigned warrants that, having due regard to all restrictions contained in the Articles of Incorporation, Articles of Organization, Partnership Agreement, Charter, Code of Regulations and By-Laws of the undersigned, the undersigned has the power and authority to enter into this Security Agreement in the manner set out herein, and the undersigned has taken all steps necessary to insure that this Security Agreement is legally valid and enforceable in accordance with its terms and conditions.

In the event the undersigned fails to comply with any provision, representation or warranty of any agreement with Ford Credit or shall default on any amount or obligation now or hereafter owing by the undersigned to Ford Credit, Ford Credit shall have, in addition to all other rights and remedies provided by law, the remedies of a secured party under the Uniform Commercial Code including, without limitation, the right to take possession of the Collateral and for this purpose Ford Credit may enter upon the premises where the Collateral may be situated and remove the same therefrom. In the event Ford Credit takes possession of the Collateral, Ford Credit may (with only such notice as required by the Uniform Commercial Code) sell the same at public or private sale or otherwise in such manner and upon such terms as shall appear to Ford Credit to be reasonable and apply the proceeds of such sale or disposition, less the expenses of retaking, holding, preparing for sale and selling the Collateral and reasonable attorney's fees and legal expenses incurred by Ford Credit to the partial or complete satisfaction of any indebtedness or obligation of the undersigned to Ford Credit.

In Witness Whereof, the undersigned hereto has caused these presents to be duly executed as of the day and year first above written.

GALLERY FORD OF PEKIN LLC
an Illinois limited liability company

By: ______________________
WILLIAM ANTHONY ATTRACHI

Title: Member

# EXHIBIT C

# CONTINUING GUARANTY

Date: February 22, 2022

To: Ford Motor Credit Company LLC

For and in consideration of $1.00 and other good and valuable considerations paid by you to each of us, the receipt and sufficiency of which is each hereby acknowledged, and to induce you to make loans to and/or make advances under your Wholesale Plan to, and to purchase or otherwise acquire retail installment sale contracts, conditional sale contracts, chattel mortgages, or other security instruments or to otherwise extend credit to or do business with:

GALLERY FORD OF PEKIN LLC
(Dealer's Name)

2200 N 8th St , Pekin, Illinois 61554
(Dealer's Address)

hereinafter called the "Dealer", each of the undersigned Guarantors hereby, jointly and severally, and unconditionally, guaranties to you, your successors or assigns that the Dealer will fully, promptly, and faithfully perform, pay and discharge all Dealer's present and future obligations to you; and agrees, without your first having to proceed against Dealer or to liquidate paper or any security therefor, to pay on demand all sums due and to become due to you from Dealer and all losses, costs, attorney's fees or expenses which you may suffer by reason of Dealer's default; and agrees to be bound by and on demand to pay any deficiency established by a sale of paper or security held with or without notice to us; together with a reasonable attorney's fee (15% if permitted by law) if placed with an attorney for collection from us. Each of us hereby subordinates any sums now or hereafter due to him/her from Dealer to the payment of any sums now or hereafter due you from Dealer (Subordinated indebtedness), and agrees that the undersigned will not, without your prior written consent, demand, take steps for the collection of, or assign, transfer or otherwise dispose of the Subordinated indebtedness or any part thereof or realize upon or enforce any collateral securing the Subordinated indebtedness or any part thereof and will not demand or accept any property of the Dealer as security for the Subordinated indebtedness of any part thereof for so long as the Dealer shall be indebted to you; provided that the following types of payments in reasonable amounts shall not be subject to this Subordination Agreement and may be paid by the Dealer to the undersigned without your prior written consent: (a) regular wage and salary payments for services rendered by the undersigned, (b) reimbursement for ordinary business expenses advanced on behalf of Dealer by the undersigned, or (c) payments for materials or property furnished by the undersigned in the ordinary course of business dealings between the undersigned and the Dealer.

Each of the undersigned hereby assigns, transfers, and sets over unto you all of his/her right, title and interest in and to the Subordinated indebtedness and agrees to execute any additional assignments and instruments you may deem necessary or desirable to effectuate, complete, perfect or further confirm such assignment and transfer; and agrees to hold in trust for and promptly remit to you for application upon any indebtedness now or hereafter owing by the Dealer to you any amount received from the Dealer or any other person on account of the Subordinated indebtedness.

Each of the undersigned Guarantors shall furnish to you such balance sheets, statements of income, expenditure and surplus and other financial statements as you may reasonably require from time to time. In addition, each Guarantor authorizes Ford Credit to obtain consumer reports

or other credit reports as it deems necessary for the origination, review, collection and enforcement of this Guaranty.

This guaranty may be terminated only by notice sent to you by registered mail, stating an effective date after the receipt of such notice by you; but shall continue thereafter as to each of us who has not given such notice, and shall continue as to each of us giving such notice with respect to any transaction with and any obligation of the Dealer incurred prior to the effective date of termination. No termination hereof shall be effected by the death of any of us. Each of us waives notice of acceptance hereof and of presentment, demand, protest and notice of non-payment or protest as to any note or obligation signed, accepted, endorsed or assigned to you by Dealer, and exemptions, rights of dower and homestead laws and any other demands and notices required by law, and we waive all setoffs and counterclaims. You may renew, extend, modify or transfer any obligations of Dealer or its customers or of co-guarantors, may accept partial payments thereon or settle, release, release, compound, compromise, collect or otherwise liquidate any obligation or security therefor in any manner and bid and purchase at any sale without affecting or impairing the obligation of any of us hereunder.

It is contemplated that this is and is intended to be the personal guaranty of payment and performance of each individual who signs this instrument, and any language in connection with any signature indicating a capacity other than personal shall be deemed stricken from and shall not be part of the signature; but this provision shall not apply to the signature of a person who signs as an officer of a corporation which is not the Dealer, and which executes this instrument as its corporate guaranty.

This instrument shall bind our respective heirs, administrators, personal representatives, successors and assigns, and shall inure to your successors and assigns. All of your rights are cumulative and not alternative. Witness our hand(s) and seal(s) the day and year first above written.

WILLIAM ANTHONY ATTRACHI
1800 N Field St. #4002
Dallas, TX 75202

# EXHIBIT D

| VIN | Make | Model | Year |
|---|---|---|---|
| 1FA6P8CF3S5416091 | FORD | MUSTANG | 2025 |
| 1FA6P8TH7S5130584 | FORD | MUSTANG | 2025 |
| 1FMCU0E14TUA34065 | FORD | ESCAPE | 2026 |
| 1FMCU0E17TUA36862 | FORD | ESCAPE | 2026 |
| 1FMCU9GN1TUA17602 | FORD | ESCAPE | 2026 |
| 1FMCU9GN2TUA10593 | FORD | ESCAPE | 2026 |
| 1FMCU9GN3TUA11168 | FORD | ESCAPE | 2026 |
| 1FMCU9GN7TUA10573 | FORD | ESCAPE | 2026 |
| 1FMCU9GN9TUA18903 | FORD | ESCAPE | 2026 |
| 1FMCU9MN1TUA02750 | FORD | ESCAPE | 2026 |
| 1FMCU9MN1TUA14719 | FORD | ESCAPE | 2026 |
| 1FMCU9MN2TUA03633 | FORD | ESCAPE | 2026 |
| 1FMCU9MN4TUA11958 | FORD | ESCAPE | 2026 |
| 1FMCU9NA5TUA39456 | FORD | ESCAPE | 2026 |
| 1FMCU9NA7TUA03932 | FORD | ESCAPE | 2026 |
| 1FMDE7BH7TLA76019 | FORD | BRONCO | 2026 |
| 1FMDE9AH2SLB20486 | FORD | BRONCO | 2025 |
| 1FMEE8BP4TLA85942 | FORD | BRONCO | 2026 |
| 1FMEE9BP1TLA53018 | FORD | BRONCO | 2026 |
| 1FMJU1RG4SEA73601 | FORD | EXPEDITION | 2025 |
| 1FMUK8DH0TGA18726 | FORD | EXPLORER | 2026 |
| 1FMUK8DH1TGB06510 | FORD | EXPLORER | 2026 |
| 1FMUK8DH2TGA11406 | FORD | EXPLORER | 2026 |
| 1FMUK8DH3TGB44725 | FORD | EXPLORER | 2026 |
| 1FMUK8DH4TGB46161 | FORD | EXPLORER | 2026 |
| 1FMUK8DH9TGA68654 | FORD | EXPLORER | 2026 |
| 1FMUK8KH5TGA48033 | FORD | EXPLORER | 2026 |
| 1FMWK8GC1TGA08618 | FORD | EXPLORER | 2026 |
| 1FTBR1C80SKA38597 | FORD | TRANSIT | 2025 |
| 1FTEW2LP0TFA14975 | FORD | F-150 | 2026 |
| 1FTEW2LP2SKF15453 | FORD | F-150 | 2025 |
| 1FTFW3L57TFA08809 | FORD | F-150 | 2026 |
| 1FTFW5L55TFA43036 | FORD | F-150 | 2026 |
| 1FTFW5L80TKD68887 | FORD | F-150 | 2026 |
| 1FTFW5LD1TFA83590 | FORD | F-150 | 2026 |
| 3FMCR9BN1SRF58714 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN2TRE23470 | FORD | BRONCO SPORT | 2026 |
| 3FMCR9CN2SRE98358 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9CN4TRE35201 | FORD | BRONCO SPORT | 2026 |
| 3FMCR9CN5SRF51974 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9GN6SRF47250 | FORD | BRONCO SPORT | 2025 |
| 3FMTK3SU8SMA14345 | FORD | MUSTANG MACH-E | 2025 |
| 3FTTW8J31TRA43947 | FORD | MAVERICK | 2026 |
| 3FTTW8J34TRA62668 | FORD | MAVERICK | 2026 |

| | | | |
|---|---|---|---|
| 3FTTW8J36SRB28653 | FORD | MAVERICK | 2025 |
| 3FTTW8J39TRA44960 | FORD | MAVERICK | 2026 |
| 3FTTW8JA4TRA48994 | FORD | MAVERICK | 2026 |
| 3FTTW8S30TRA47860 | FORD | MAVERICK | 2026 |
| 3FTTW8SA5TRA54768 | FORD | MAVERICK | 2026 |
| 3FTTW8SAXTRA34791 | FORD | MAVERICK | 2026 |

| | | | |
|---|---|---|---|
| 1C4PJLCB6MD156083 | JEEP | CHEROKEE | 2021 |
| 1C6JJTEGXLL211113 | JEEP | GLADIATOR | 2020 |
| 1C6RRFFG4NN311405 | RAM | 1500 | 2022 |
| 1FMCU0GD1KUB11304 | FORD | ESCAPE | 2019 |
| 1FMCU0GZ8PUA78840 | FORD | ESCAPE | 2023 |
| 1FMCU9BZ8NUA32353 | FORD | ESCAPE | 2022 |
| 1FMCU9G66NUB69046 | FORD | ESCAPE | 2022 |
| 1FMCU9J94LUB10545 | FORD | ESCAPE | 2020 |
| 1FMCU9NZ8PUB12590 | FORD | ESCAPE | 2023 |
| 1FMJK1J82PEA51291 | FORD | EXPEDITION | 2023 |
| 1FMSK8DHXMGB77438 | FORD | EXPLORER | 2021 |
| 1FT7W2B63JEB37092 | FORD | F-250 | 2018 |
| 1FT7W2BT4LEE04782 | FORD | F-250 | 2020 |
| 1FTEW1EP7JKF14739 | FORD | F-150 | 2018 |
| 1FTFW1E84MKD50304 | FORD | F-150 | 2021 |
| 1G1ZD5ST2RF161243 | CHEVROLET | MALIBU | 2024 |
| 1G1ZD5ST3KF131027 | CHEVROLET | MALIBU | 2019 |
| 1G1ZD5ST6RF152044 | CHEVROLET | MALIBU | 2024 |
| 1GCPTDEK1R1297942 | CHEVROLET | COLORADO | 2024 |
| 1GKENPKS8RJ157947 | GMC | ACADIA | 2024 |
| 1GYFZCR47NF100232 | CADILLAC | XT4 | 2022 |
| 2C4RC1S7XRR103220 | CHRYSLER | PACIFICA | 2024 |
| 3C4NJDBB6KT593068 | JEEP | COMPASS | 2019 |
| 3C4NJDBN0PT553621 | JEEP | COMPASS | 2023 |
| 3C4NJDDB1LT166928 | JEEP | COMPASS | 2020 |
| 3C6UR5CJ6RG174471 | RAM | 2500 | 2024 |
| 3FMTK3SUXPMA27993 | FORD | MUSTANG MACH-E | 2023 |
| 3GCUDDED1PG347769 | CHEVROLET | SILVERADO | 2023 |
| 3GNAXTEG0PS117370 | CHEVROLET | EQUINOX | 2023 |
| 3GTEK233X9G148019 | GMC | SIERRA | 2009 |
| 3MZBPBCMXRM407037 | MAZDA | 3 | 2024 |
| 5N1AT3BB4MC767894 | NISSAN | ROGUE | 2021 |
| 5YFEPMAEXNP361588 | TOYOTA | COROLLA | 2022 |
| 7MUFBABG7PV008145 | TOYOTA | COROLLA CROSS | 2023 |
| JTDDPRAEXLJ102559 | TOYOTA | COROLLA | 2020 |
| KL4AMDSLXSB073031 | BUICK | ENCORGE GX | 2025 |
| KL4MMBS21MB059692 | BUICK | ENCORGE GX | 2021 |
| KL77LKEP8SC003363 | CHEVROLET | TRAX | 2025 |
| KM8S2DA16NU044940 | HYUNDAI | SANTA FE | 2022 |
| KMHD04LB3LU945121 | HYUNDAI | ELANTRA | 2020 |
| LRBFX4SX6LD115785 | BUICK | ENVISION | 2020 |

| | | | |
|---|---|---|---|
| WDCTG4GB7LJ676137 | MERCEDES-BENZ | GLA | 2020 |
| 1FMCU0H65NUA96259 | FORD | ESCAPE | 2022 |
| 5N1BT3BB5PC790674 | NISSAN | ROGUE | 2023 |
| 1FMCU9NAXSUA72242 | FORD | ESCAPE | 2025 |
| 1FMUK8DH4TGA20608 | FORD | EXPLORER | 2026 |
| 1FTFW2L52SFA12954 | FORD | F-150 | 2025 |
| 1FTFW3L81SFA18261 | FORD | F-150 | 2025 |
| 1FTFW3L83SKD25163 | FORD | F-150 | 2025 |
| 1FTFW3L88SFA13512 | FORD | F-150 | 2025 |
| 3FMCR9BN2SRF01812 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN4SRE82759 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN4SRF68833 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN5SRE81717 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN5SRF83227 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN9SRE65715 | FORD | BRONCO SPORT | 2025 |
| 3FTTW8JA1TRA06735 | FORD | MAVERICK | 2026 |
| 3FTTW8JAXTRA06359 | FORD | MAVERICK | 2026 |
| 1FTYR1ZM3HKB46266 | FORD | TRANSIT | 2017 |
| 1FTRS4UG9PKA44822 | Ford | TRANSIT | 2023 |
| NM0GE9F77E1163851 | Ford | TRANSIT | 2014 |
| 1GNSKHKC8HR176883 | Chevrolet | SUBURBAN LT | 2017 |
| 3FTTW8E9XNRA43303 | Ford | MAVERICK XLT | 2022 |
| 1FMCU0DG1AKC94616 | FORD | ESCAPE | 2010 |
| 1FMCU0GDXJUD27845 | FORD | ESCAPE | 2018 |
| KM8J3CAL5MU302416 | HYUNDAI | TUCSON | 2021 |
| 1FMCU0H63LUB20152 | FORD | ESCAPE | 2020 |
| 1FTRS4UGPKA44822 | FORD | T350HD | 2023 |

# EXHIBIT E

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

RECEIVED
IL SECRETARY OF STATE
UNIFORM COMMERCIAL CODE
02/24/2022 11:55 AM
$20.00 Electronic
**28197144** FS

A. NAME & PHONE OF CONTACT AT FILER (optional)
ANDREA WALKER 615-315-2432

B. E-MAIL CONTACT AT FILER (optional)
AWALKE29@FORD.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

FORD MOTOR CREDIT COMPANY LLC
P.O. BOX 680020 MD 610
FRANKLIN, TN 37068

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME
GALLERY FORD OF PEKIN LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 2200 N 8TH ST | PEKIN | IL | 61554 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME
FORD MOTOR CREDIT COMPANY LLC

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| P.O. BOX 680020 MD 610 | FRANKLIN | TN | 37068 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

This financing statement covers the following types (or items) of collateral now owned or hereafter acquired by debtor(s):
Equipment, furniture, machinery, demonstrators/service vehicles, supplies and other goods of every kind.
Motor vehicles, tractors, trailers, implements, service parts/ accessories, other inventory of every kind and any accessions thereto.
Accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto.
Fixtures located at the above address and at any other address from which the above debtor conducts business now or in the future.
All proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
AC GALLERY FORD OF PEKIN LLC 161838 AW

[redacted]

RECEIVED

IL SECRETARY OF STATE

UNIFORM COMMERCIAL CODE

02/28/2025 10:34 AM
$20.00 Electronic

**09984701** **AM**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
ANDREA WALKER 615-315-2432

B. E-MAIL CONTACT AT SUBMITTER (optional)
AWALKE29@FORD.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

FORD MOTOR CREDIT COMPANY LLC
P.O. BOX 35922
CLEVELAND, OH 44135

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
28197144

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ PARTY INFORMATION CHANGE:
Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
FORD MOTOR CREDIT COMPANY LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
FORD MOTOR CREDIT COMPANY LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 35922 | CLEVELAND | OH | 44135 | USA |

8. ☐ COLLATERAL CHANGE: Check only one box: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral
Indicate collateral:
*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
FORD MOTOR CREDIT COMPANY LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA:
AC 161838 GALLERY FORD OF PEKIN LLC

# EXHIBIT F

March 27, 2026

Gallery Ford of Pekin LLC
2200 N 8th St.
Pekin, IL 61554

You are in default of the terms of the Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement executed by you on February 22, 2022 ("Wholesale Agreement") by your failure to remit to Ford Motor Credit Company LLC (“Ford Credit”) the unpaid balance for vehicles sold, leased, or placed in use.
As of the date of this letter, the total amount due is:

| | |
|---|---|
| Balance Outstanding for vehicles sold, leased, or placed in use but not paid | $415,937.35 |
| Wholesale charges due as of 2/28/2026 : | $22,404.86 |
| Total Amount Due: | $438,342.21 |

Ford Credit hereby demands immediate payment of the Total Amount Due. If you fail to make payment as demanded, we may take further action to protect our interests by pursuing all remedies provided at law, including taking possession of all property securing the Total Amount Due.

The Total Amount Due does not include any interest or other charges that accrue after the date of this letter; nor does it include any reimbursement for returned checks or other media of payment made after the date of this letter.

Until further notice from Ford Credit, the Wholesale Agreement is now limited to the financing of vehicles for which you have a firm customer's order, provided such order is submitted to us for prior approval. All applicable manufacturer(s) will be notified of the foregoing and you remain responsible for any vehicles funded on your behalf by Ford Credit. Payment for all vehicles sold must be made by certified funds unless otherwise notified.

In addition, this letter is notice to you that the interest rate on the outstanding balance and any advances made, in each case pursuant to the Wholesale Agreement, will be **increased by four (4) percentage points**, effective ten (10) days from the date of this letter.

Your prompt attention to this matter and the demand made herein is requested.

Joe Susic
Regional Manager Ford Credit

Ford
Credit

March 27, 2026

William Attrachi

Subject: Gallery Ford of Pekin LLC
2200 N. 8th St.
Pekin, IL 61554

This is to advise that Ford Motor Credit Company (Ford Credit) has demanded payment of $438,342.21 from the above named dealer in accordance with the attached letter of demand.

As a guarantor of all obligations owing by Gallery Ford of Pekin to Ford Credit, pursuant to a Continuing Guaranty agreement executed by you on February 22, 2022, demand hereby is made upon you for payment of the said $438,342.21.

This demand for payment is made without prejudice to any other amounts now or hereafter owing by the above named dealer or by you to Ford Credit.

We expect that you will honor your guaranty obligation to Ford Credit. In that regard, we look forward to your prompt and affirmative response to this demand for payment.

Please be advised that if you fail to honor your guaranty obligation, Ford Credit intends to exercise its remedies pursuant to law and contracts.

Joe Susic
Regional Manager

# EXHIBIT G

Ford Credit

April 27th, 2026

Gallery Ford of Pekin, LLC
2200 N 8th St
Pekin, IL 61554

Dear Mr. William Attrachi:

You are in default of the terms of the Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement executed by you on February 22, 2022 ("Wholesale Agreement") by your failure to remit to Ford Motor Credit Company LLC ("Ford Credit") the unpaid balance for vehicles sold, leased, or placed in use.

As of the date of this letter, the total amount due is:

| | |
|---|---|
| Vehicle Financing per list of units: | $ 3,929,348.89 |
| Wholesale charges due as of 3/31/26: | $ 47,409.75 |
| Other Amounts Owed as of 4/7/26: | $ 6,533.27 |
| **Total Amount Due:** | **$ 3,983,291.91** |

Ford Credit hereby demands immediate payment of the Total Amount Due. If you fail to make payment as demanded, we may take further action to protect our interests by pursuing all remedies provided at law including, taking possession of all property securing the Total Amount Due.

The Total Amount Due does not include any interest or other charges that accrue after the date of this letter; nor does it include any reimbursement for returned checks or other media of payment made after the date of this letter.

Until further notice from Ford Credit, the Wholesale Agreement is now limited to the financing of vehicles for which you have a firm customer's order, provided such order is submitted to us for prior approval. All applicable manufacturer(s) will be notified of the foregoing and you remain responsible for any vehicles funded on your behalf by Ford Credit. Payment for all vehicles sold must be made by certified funds unless otherwise notified.

Your prompt attention to this matter and the demand made herein is requested.

Joe Susic

Joe Susic
Regional Manager

CC: Sasha Rahmati
Ray Fregia, Jr.

DOC 331-56 FC 6/26/2018

## Vehicle Financing as of 4/27/2026

| VIN | Make | Model | Year |
|---|---|---|---|
| 1FA6P8CF3S5416091 | FORD | MUSTANG | 2025 |
| 1FA6P8TH7S5130584 | FORD | MUSTANG | 2025 |
| 1FMCU0E14TUA34065 | FORD | ESCAPE | 2026 |
| 1FMCU0E17TUA36862 | FORD | ESCAPE | 2026 |
| 1FMCU9GN1TUA17602 | FORD | ESCAPE | 2026 |
| 1FMCU9GN2TUA10593 | FORD | ESCAPE | 2026 |
| 1FMCU9GN3TUA11168 | FORD | ESCAPE | 2026 |
| 1FMCU9GN7TUA10573 | FORD | ESCAPE | 2026 |
| 1FMCU9GN9TUA18903 | FORD | ESCAPE | 2026 |
| 1FMCU9MN1TUA02750 | FORD | ESCAPE | 2026 |
| 1FMCU9MN1TUA14719 | FORD | ESCAPE | 2026 |
| 1FMCU9MN2TUA03633 | FORD | ESCAPE | 2026 |
| 1FMCU9MN4TUA11958 | FORD | ESCAPE | 2026 |
| 1FMCU9MN4TUA13712 | FORD | ESCAPE | 2026 |
| 1FMCU9NA0TUA39137 | FORD | ESCAPE | 2026 |
| 1FMCU9NA5TUA39456 | FORD | ESCAPE | 2026 |
| 1FMCU9NA7TUA03932 | FORD | ESCAPE | 2026 |
| 1FMDE9AH2SLB20486 | FORD | BRONCO | 2025 |
| 1FMJU1RG4SEA73601 | FORD | EXPEDITION | 2025 |
| 1FMUK8DH0TGA18726 | FORD | EXPLORER | 2026 |
| 1FMUK8DH2TGA11406 | FORD | EXPLORER | 2026 |
| 1FMUK8DH9TGA68654 | FORD | EXPLORER | 2026 |
| 1FMUK8KH5TGA48033 | FORD | EXPLORER | 2026 |
| 1FMWK8GC1TGA08618 | FORD | EXPLORER | 2026 |
| 1FTBR1C80SKA38597 | FORD | TRANSIT | 2025 |
| 1FTEW2LP2SKF15453 | FORD | F-150 | 2025 |
| 1FTFW3L57TFA08809 | FORD | F-150 | 2026 |
| 3FMCR9BN1SRF58714 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9CN2SRE98358 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9CN5SRF51974 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9GN6SRF47250 | FORD | BRONCO SPORT | 2025 |
| 3FMTK3SU8SMA14345 | FORD | MUSTANG MACH-E | 2025 |
| 3FTTW8J36SRB28653 | FORD | MAVERICK | 2025 |
| 1C4HJXDN2NW246759 | JEEP | WRANGLER UNLIMI | 2022 |
| 1C4PJLCB6MD156083 | JEEP | CHEROKEE | 2021 |
| 1C6JJTEGXLL211113 | JEEP | GLADIATOR | 2020 |
| 1C6RRFFG4NN311405 | RAM | 1500 | 2022 |
| 1FMCU03138KB42263 | FORD | ESCAPE | 2008 |
| 1FMCU0GD1KUB11304 | FORD | ESCAPE | 2019 |
| 1FMCU0GZ8PUA78840 | FORD | ESCAPE | 2023 |
| 1FMCU9BZ8NUA32353 | FORD | ESCAPE | 2022 |
| 1FMCU9G66NUB69046 | FORD | ESCAPE | 2022 |
| 1FMCU9J90LUB07495 | FORD | ESCAPE | 2020 |
| 1FMCU9J94LUB10545 | FORD | ESCAPE | 2020 |
| 1FMCU9MN1SUA86583 | FORD | ESCAPE | 2025 |
| 1FMCU9NZ8PUB12590 | FORD | ESCAPE | 2023 |
| 1FMJK1J82PEA51291 | FORD | EXPEDITION | 2023 |
| 1FMSK8DHXMGB77438 | FORD | EXPLORER | 2021 |
| 1FT7W2B63JEB37092 | FORD | F-250 | 2018 |
| 1FT7W2BT4LEE04782 | FORD | F-250 | 2020 |
| 1FTEW1E46KFC27005 | FORD | F-150 | 2019 |
| 1FTEW1EP2MFB82142 | FORD | F-150 | 2021 |

| | | | |
|---|---|---|---|
| 1FTEW1EP7JKF14739 | FORD | F-150 | 2018 |
| 1FTEW1EP9GKE62166 | FORD | F-150 | 2016 |
| 1FTFW1E84MKD50304 | FORD | F-150 | 2021 |
| 1G1ZD5ST2RF161243 | CHEVROLET | MALIBU | 2024 |
| 1G1ZD5ST3KF131027 | CHEVROLET | MALIBU | 2019 |
| 1G1ZD5ST6RF152044 | CHEVROLET | MALIBU | 2024 |
| 1GCPTDEK1R1297942 | CHEVROLET | COLORADO | 2024 |
| 1GKENPKS8RJ157947 | GMC | ACADIA | 2024 |
| 1GYFZCR47NF100232 | CADILLAC | XT4 | 2022 |
| 2C4RC1S7XRR103220 | CHRYSLER | PACIFICA | 2024 |
| 3C4NJDBB6KT593068 | JEEP | COMPASS | 2019 |
| 3C4NJDBN0PT553621 | JEEP | COMPASS | 2023 |
| 3C4NJDDB1LT166928 | JEEP | COMPASS | 2020 |
| 3C6UR5CJ6RG174471 | RAM | 2500 | 2024 |
| 3FMTK3SUXPMA27993 | FORD | MUSTANG MACH-E | 2023 |
| 3GCUDDED1PG347769 | CHEVROLET | SILVERADO | 2023 |
| 3GNAXTEG0PS117370 | CHEVROLET | EQUINOX | 2023 |
| 3GTEK233X9G148019 | GMC | SIERRA | 2009 |
| 3KPF24AD2KE065424 | KIA | FORTE | 2019 |
| 3MZBPBCMXRM407037 | MAZDA | 3 | 2024 |
| 5N1AT3BB4MC767894 | NISSAN | ROGUE | 2021 |
| 5YFEPMAEXNP361588 | TOYOTA | COROLLA | 2022 |
| 7MUFBABG7PV008145 | TOYOTA | COROLLA CROSS | 2023 |
| JTDDPRAEXLJ102559 | TOYOTA | COROLLA | 2020 |
| KL4AMDSLXSB073031 | BUICK | ENCORGE GX | 2025 |
| KL4MMBS21MB059692 | BUICK | ENCORGE GX | 2021 |
| KL77LKEP8SC003363 | CHEVROLET | TRAX | 2025 |
| KM8S2DA16NU044940 | HYUNDAI | SANTA FE | 2022 |
| KMHD04LB3LU945121 | HYUNDAI | ELANTRA | 2020 |
| LRBFX4SX6LD115785 | BUICK | ENVISION | 2020 |
| WDCTG4GB7LJ676137 | MERCEDES-BENZ | GLA | 2020 |
| 1FMCU0H65NUA96259 | FORD | ESCAPE | 2022 |
| 5N1BT3BB5PC790674 | NISSAN | ROGUE | 2023 |
| 1FMUK8DH4TGA20608 | FORD | EXPLORER | 2026 |
| 3FMCR9BN4SRF68833 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN5SRF83227 | FORD | BRONCO SPORT | 2025 |
| 3FTTW8JA1TRA06735 | FORD | MAVERICK | 2026 |
| 3FTTW8JAXTRA06359 | FORD | MAVERICK | 2026 |
| 1FMCU9NAXSUA72242 | FORD | ESCAPE | 2025 |
| 1FTFW2L52SFA12954 | FORD | F-150 | 2025 |
| 1FTFW3L81SFA18261 | FORD | F-150 | 2025 |
| 1FTFW3L83SKD25163 | FORD | F-150 | 2025 |
| 1FTFW3L88SFA13512 | FORD | F-150 | 2025 |
| 3FMCR9BN2SRF01812 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN4SRE82759 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN5SRE81717 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN9SRE65715 | FORD | BRONCO SPORT | 2025 |
| 1FMUK8HH6TGB43188 | FORD | EXPLORER | 2026 |
| 1FTFW3L80TFA77285 | FORD | F-150 | 2026 |
| 1FTFW5L80TKD68887 | FORD | F-150 | 2026 |
| 1FTFW5LD1TFA83590 | FORD | F-150 | 2026 |
| 3FMCR9CN4TRE35201 | FORD | BRONCO SPORT | 2026 |
| 3FTTW8J31TRA43947 | FORD | MAVERICK | 2026 |
| 3FTTW8J34TRA62668 | FORD | MAVERICK | 2026 |

| | | | |
|---|---|---|---|
| 3FTTW8J38TRA69073 | FORD | MAVERICK | 2026 |
| 1FMDE7BH7TLA76019 | FORD | BRONCO | 2026 |
| 1FMEE8BP4TLA85942 | FORD | BRONCO | 2026 |
| 1FMEE9BP1TLA53018 | FORD | BRONCO | 2026 |
| 1FMUK8DH1TGB06510 | FORD | EXPLORER | 2026 |
| 1FMUK8DH3TGB44725 | FORD | EXPLORER | 2026 |
| 1FMUK8DH4TGB46161 | FORD | EXPLORER | 2026 |
| 1FMUK8HH6TGB43188 | FORD | EXPLORER | 2026 |
| 1FTER4HH8TLE03465 | FORD | RANGER | 2026 |
| 1FTEW2LP0TFA14975 | FORD | F-150 | 2026 |
| 1FTFW3L57TFA08809 | FORD | F-150 | 2026 |
| 1FTFW5L55TFA43036 | FORD | F-150 | 2026 |
| 1FTFW5L80TKD68887 | FORD | F-150 | 2026 |
| 1FTFW5LD1TFA83590 | FORD | F-150 | 2026 |
| 3FMCR9BN2TRE23470 | FORD | BRONCO SPORT | 2026 |
| 3FMCR9CN4TRE35201 | FORD | BRONCO SPORT | 2026 |
| 3FTTW8J31TRA43947 | FORD | MAVERICK | 2026 |
| 3FTTW8J34TRA62668 | FORD | MAVERICK | 2026 |
| 3FTTW8J39TRA44960 | FORD | MAVERICK | 2026 |
| 3FTTW8JA4TRA48994 | FORD | MAVERICK | 2026 |
| 3FTTW8S30TRA47860 | FORD | MAVERICK | 2026 |
| 3FTTW8SA5TRA54768 | FORD | MAVERICK | 2026 |
| 3FTTW8SAXTRA34791 | FORD | MAVERICK | 2026 |

Ford Credit

April 27, 2026

William Attrachi
1800 N Field St. #4002
Dallas, TX 75202

Subject: Gallery Ford of Pekin, LLC
2200 N 8th St
Pekin. IL 61554

This is to advise that Ford Credit (FMCC) has demanded payment of $3,983,291.91 from the above named dealer in accordance with the attached letter of demand.

As a guarantor of all obligations owing by Gallery Ford of Pekin, LLC to FMCC, pursuant to a Continuing Guaranty agreement executed by you on February 22, 2022, demand hereby is made upon you for payment of the said $3,983,291.91.

This demand for payment is made without prejudice to any other amounts now or hereafter owing by the above named dealer or by you to FMCC.

We expect that you will honor your guaranty obligation to FMCC. In that regard, we look forward to your prompt and affirmative response to this demand for payment.

Please be advised that if you fail to honor your guaranty obligation, FMCC intends to exercise its remedies pursuant to law and contracts.

*Joe Susic*

Joe Susic
Regional Manager - Chicago